# Exhibit 10



1777 T Street NW, Washington DC 20009-7125 | T 800.837.3792  202.238.9088 | F 202.238.9003 | legal@americanhumanist.org | www.humanistlegalcenter.org

November 26, 2014

*Via Email and Certified Mail*

George Solomon, Director of Prisons; George.Solomon@ncdps.gov
Gwen Norville, Deputy Director of Prisons; Gwen.Norville@ncdps.gov
North Carolina Department of Public Safety
831 West Morgan Street
4260 Mail Service Center
Raleigh NC 27699-4260

Chaplaincy Services
Chaplain Betty Brown, Director; betty.brown@ncdps.gov
4263 Mail Service Center
Raleigh, NC 27699-4263
Fax:  (919) 838-3625

**Re: Notice of Intent to File Lawsuit for Constitutional Violations**

Dear Mr. Solomon, Ms. Norville, and Ms. Brown,

      Our office represents Kwame Teague (0401897), a Humanist inmate currently incarcerated at Lanesboro Correctional Institution in North Carolina. We are writing in regards to the North Carolina Department of Public Safety's (hereafter "Department") refusal to accommodate Humanist inmates generally, and specifically, with its refusal to grant Mr. Teague's request for a Humanist group and its refusal to allow him to identify as a Humanist in OPUS ("Offender Population Unified System."). Such actions amount to a violation of the Establishment Clause of the First Amendment, which prohibits the government from favoring some religions over others, or religion over nonreligion, and the Equal Protection Clause of the Fourteenth Amendment, which prohibits the government from discriminating against an inmate for his deeply held Humanist convictions.

      The American Humanist Association (AHA) is a national nonprofit organization with over 350,000 supporters and members across the country, including many in North Carolina. The mission of AHA's legal center is to protect one of the most fundamental principles of our democracy: the constitutional mandate requiring separation of church and state. Our legal center includes a network of cooperating attorneys from around the country, including North Carolina, and we have litigated constitutional cases in state and federal courts from coast to coast.

The Department recognizes a variety of religions (including several non-theistic "religions" such as Asatru,[1] Buddhism, and Wicca[2]), for OPUS purposes and authorizes inmates of these religions to meet in groups with other inmates of their respective religious preferences on a weekly basis. Recognized religions authorized for such meeting groups include: (1) American Indian; (2) Asatru; (3) Assemblies of Yahweh; (4) Buddhism; (5) Christian-Protestant; (6) Christian-Catholic; (7) Christian-Eastern Orthodox; (8) Hindu; (9) Islam; (10) Judaism; (11) Moorish Science Temple; (12) Rastafarian; (13) Wiccan.[3] Neither Humanism nor Atheism is an option for prisoner registration purposes (OPUS). There is no authorized meeting group for Humanists and Atheists either. Yet there are at least 20 Humanist and Atheist inmates at the Lanesboro Correctional Institution alone.

In 2012, Mr. Teague converted from Islam to Ethical Humanism. Humanism guides him, comforts him, and answers many of life's big questions. Humanism is more than a disbelief in deities. Humanism includes an affirmative naturalistic outlook; an acceptance of reason and empiricism as the primary means of attaining truth; an affirmative recognition of ethical duties; and a strong commitment to human rights. Humanism has formal structure, with clergy, chaplains, and formal entities dedicated to the practice. Humanist principles are promoted and defended by formal organizations such as AHA (which provides a statement of Humanist principles in a document signed by 21 Nobel laureates and thousands of others), as well as International Humanist and Ethical Union. AHA's adjunct organization, Humanist Society, a religious 501(c)(3) incorporated in 1939, is authorized to train and certify people who upon endorsement are accorded the same rights and privileges granted by law to priests, ministers, and rabbis.

Accordingly, Mr. Teague requested to have his OPUS commitment changed from Islam to Humanist pursuant to Chapter H, Section .0104 of the Division of Prison's Policies and Procedures. H.0104(a) ("Inmates shall have the freedom to make a religious commitment, change a religious commitment, or reject religion altogether."). Mr. Teague also filed a "Request for Religious Assistance" (Form DC-572) to establish Humanist group meetings.[4] Both of these requests were denied on the stated grounds that the "Department of Public Safety does not recognize 'Humanism' as a religion." However, as discussed in more detail below, despite the fact that Humanism and Atheism are non-theistic, the courts (including the Supreme Court) have long considered both to be equivalent to "religion" for constitutional purposes.

On February 28, 2012, Mr. Teague filed a formal grievance complaint with the Department of Correction at Warren Correctional Institution, regarding the prison's refusal to recognize Humanism as Mr. Teague's OPUS designation and its refusal to authorize a Humanist study group. In March

---

[1] The Asatru Alliance states: "There are many ways to define what a god is, and it all depends on you!" (http://theasatrucommunity.org/2012/09/17/what-is-a-god/).

[2] The Wiccan Church of North Carolina states: "We Do Not Believe in . . . the supernatural. Meaning, most Wicca believe all things are natural. All things that make up this earth (living & dead) animated or inanimate and the spirits of both this world & the next, are all a natural part of existence. To be beyond or 'more than' nature is not something we recognize." http://lifetempleseminary.org/crafte-beliefs.htm

[3] North Carolina Department of Correction, Division of Prisons, "RELIGIOUS PRACTICES REFERENCE MANUAL."

[4] *See* H.0103 ("Inmates who wish to have incorporated a religious practice that is not recognized by North Carolina Prisons must submit a DC-572 Request for Religious Assistance form to the facility chaplain or other designated staff, who will then consult with the Chaplaincy Services Director regarding the availability of temporary accommodations in conjunction with the facility head or designee.").

2012, Mr. Teague sent a letter to Chaplain Betty Brown, Director of Chaplaincy Services,[5] requesting information regarding the correct procedures to have Humanism recognized by the Department of Corrections. On March 8, 2012, Ms. Brown responded, advising Mr. Teague to prepare and file a "Request for Religious Assistance" (Form DC-572). He heeded her advice and filed such form. However, upon submitting it, a Mr. Boisvert informed him that Humanism is not recognized in North Carolina prisons.

In April 2012, Mr. Teague filed an administrative remedy appeal with the Department in connection with the prison's refusal to recognize Humanism and authorize a Humanist group. The Department's response to "step one" of the grievance form stated:

> Investigation into your complaint revealed that Mr Boisvert, Case Manager has explained to you that the Department of Public Safety does not recognize Humanism. You desire that a special time be allowed for you to form a group. You are listed in Opus as Islamic. No one will disturb you in the orderly conduct of your religion. However, since the Department of Public Safety does not recognize "Humanism" as a religion, no facilities will be provided same. There is no violation of the First Amendment Right, respecting an establishment of religion, or prohibiting the free exercise thereof.
> No further action is necessary at this time.

The response to "step two" of the grievance form, signed on April 16, 2012, stated: "Additional investigation reveals that staff has addressed inmate's complaint appropriately. This should resolve your grievance." On April 27, 2012, "step three" of Mr. Teague's administrative remedy form (DC-410B) was marked "received" by the Department of Correction. The "Findings and Disposition Order," which was signed on May 7, 2012, provided:

> Kwame Teague filed this grievance on February 29, 2012 at Warren Correctional Institution. He asserts that staff were not providing assistance to him in obtaining recognition of his religion
>
> Staff response indicated that an investigation of the inmate's complaint was conducted. Staff concluded that the inmate has not been treated unfair or outside the scope of correctional policies and procedures.
>
> This examiner has carefully reviewed the grievance and the response given by staff in the DC-410A response. From this review, I am convinced that staff has adequately addressed this inmate's grievance concerns. I adopt the facts found by the staff investigator.
>
> On this record, this inmate's allegations are insufficiently supported. Thus, this grievance is dismissed for lack of supporting evidence.

On June 21, 2012, Mr. Teague sent another letter to Ms. Brown, stating:

---

[5] "North Carolina Prisons employs a Director of Chaplaincy Services to formulate and provide professional supervision of chaplaincy services. The Director of Chaplaincy Services provides guidance and assistance for the religious activities to all the facilities within the North Carolina Prisons." H.0100.

3

I am writing in response to your letter of March 8, 2012 relative to my request for information regarding the correct procedures to have my religion of secular humanism recognized by the Department of Correction as well as the State of North Carolina. You advised me to prepare and file a "Request for Religious Assistance" (Form DC-572). This I did. However, Mr. Boisvert advised me that secular humanism is not recognized in N.C.

I currently appear in Inmate computer records as a Muslim. This does not reflect my faith. My religion is a form of secular humanism called Ethical Humanism. I am simply seeking information as to the steps I need to take to accomplish my objective of accurate reflection of my religion. I followed your advice, but it has resulted in the same answer (secular humanism is not recognized in N.C.) that caused me to initially write you.

Please help me in this matter. At this point, I am being denied the right of religious expression granted to Muslims, Christians and all other officially-recognized religious. I only want the same treatment that is afforded to these other faith groups.

Thank You,

On July 6, 2012, our office sent a letter to Ms. Brown regarding the unconstitutionality of the Department's actions in refusing to recognize Teague's request to change his OPUS assignment to Humanist and its refusal to accommodate a Humanist meeting group. On July 16, 2012, Ms. Brown responded to our letter, stating that "[u]pon receipt of the DC-572, members of the NC Religious Practice Committee will then review it and subsequently send it up the chain of command with recommendations." However, at that point, Mr. Teague's DC-572 application had already been turned down.

On May 15, 2013, Ms. Brown sent a letter to Mr. Teague, stating as follows:

I responded to you via letter on March 15, 2013 regarding your DC-572 request to have "Humanism" as an accommodated faith practice by the North Carolina Department of Public Safety. I also stated that our records determine that you changed your faith on February 11, 2013 to Buddhist.

Now on May 8, 2013 I am in receipt of a second DC-572 requesting "Humanism" again. In reviewing the information you provided, you are referring the "Ethical Humanism Society." We made several attempts to contact the "Ethical Humanism Society." Mr. Best from the information you provided on the DC-572 and have not been successful as of this date. I research information you submitted regarding the "Ethical Humanism Society." I called the number listed on the website for "Ethical Humanism Society", in Chapel Hill, NC and spoke to someone regarding your membership; he could not confirm you being a member. I continued to read the information and could not find the information needed to move forward with your request.

Mr. Teague the purpose of a DC-572 is to assist the Religious Practices Committee in making necessary determination in order to protect the Constitutional rights of inmates. The Religious Practices Committee process is to obtain authentic information and meet with legitimate representatives of all religious groups who have practitioners incarcerated in North Carolina Prison's to discuss how their religious needs can be met

> within the constraints of a prison environment. To this date we have not been able to authenticate your information.
>
> Religious Practices Committee did not recommend "Ethical Humanism Society" as an established faith within the North Carolina Department of Public Safety, Prisons Section. We are proceeding with good will and asking the facility where you are housed to accommodate you through individual private devotion in your cell, with publications that you may purchase. This is the least restrictive means. However, any books ordered must be within the publication policy guidelines.
>
> It is our desire and policy to offer all inmates their religious rights within the boundaries of legitimate penological custody and security objectives.

Mr. Randall Best, the leader (Humanist Minister) of the Ethical Humanist Society of the Triangle informs us that they have an answering machine and that no messages were ever left by Ms. Brown. On June 10, 2013, Mr. Best sent a letter to Ms. Brown, which provided:

> I have been leaving voice mail messages for you to call me for over a week now. I know that you must be busy but I look forward to hearing from you soon.
>
> I would like to talk to you about Ethical Humanism, also known as Ethical Culture, and Mr. Kwame Teague's application to have Ethical Humanism recognized as an accommodated faith practice by the North Carolina Department of Public Safety.
>
> Ethical Culture/Ethical Humanism, founded in 1876 in New York City by Felix Adler, is a religion free from supernatural elements that focuses on ethical relationships and practices. We are a recognized religious denomination by the U.S. Government.
>
> Some of the history of Ethical Culture/Ethical Humanism can be found on the Wikipedia website at: http://en.wikipedia.org/wiki/Ethical_culture. The website for the Ethical Humanist Society of the Triangle, my congregation in Chapel Hill, is: http://www.ncethicalsociety.org.
>
> I would be more than happy to talk to you about Ethical Humanism, Humanism in general, and answer any questions that you may have. The best way to reach me is on my cell phone, [redacted]. I hope to hear from you soon.

After sending Ms. Brown the letter and leaving her multiple voice messages, she eventually returned his call. However, she did not indicate that the prison would authorize a Humanist meeting group or allow Mr. Teague to identify as a Humanist for OPUS purposes.

    As of November 2014, the Department has yet to accommodate Mr. Teague's request to form a Humanist meeting group and his request to identify as a Humanist. Mr. Teague's administrative remedies have been exhausted. The Department's refusal to accommodate Humanist inmates with a Humanist study group, while authorizing such groups for inmates of a wide array of religious traditions, including non-theistic traditions, is a clear violation of the Establishment Clause and Equal Protection Clause, *infra*.

The purpose of this letter is to advise you that our organization will be filing a federal lawsuit on Mr. Teague's behalf unless the Department forthwith authorizes Mr. Teague to identify as a Humanist in OPUS, grants his request for a Humanist meeting group, and provides us with written assurances that Mr. Teague will be authorized to meet in such group for the duration of his sentence.

The First Amendment's Establishment Clause "commands a separation of church and state." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). It requires the "government [to] remain secular, rather than affiliate itself with religious beliefs or institutions." *Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 610 (1989). Not only must the government not advance, promote, affiliate with, or favor any particular religion, it "'may not favor religious belief over disbelief.'" *Id.* at 593 (citation omitted). The Establishment Clause "'means at least' that [n]either a state nor the Federal Government" can "aid one religion, aid all religions, or prefer one religion over another." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013) (citation omitted).

The Department's refusal to authorize a Humanist study group while authorizing groups for many religions (both theistic and non-theistic) violates the Establishment Clause. *See Kaufman v. Pugh*, 733 F.3d 692 (7th Cir. 2013) (*Kaufman II*) (refusal to authorize Atheist study group violated Establishment Clause); *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005) (*Kaufman I*) (same); *Am. Humanist Ass'n & Jason Michael Holden v. United States*, 2014 U.S. Dist. LEXIS 154670 (D. Or. Oct. 30, 2014) (refusal to authorize secular humanist study group in prison violates Establishment Clause and Equal Protection Clause); *Sherman-Bey v. Marshall*, 2011 U.S. Dist. LEXIS 73801, *27-28 (C.D. Cal. 2011) (Moorish Science Temple inmate stated Establishment Clause and Equal Protection claims where he was denied group study on same terms as other religions); *Rouser v. White*, 707 F. Supp. 2d 1055, 1060, 1066-67 (E.D. Cal. 2010) (prison violated Establishment and Equal Protection Clauses by treating Wiccans differently with respect to group worship). *Cf. Hartmann*, 707 F.3d at 1125.

Prison "officials violate the Establishment Clause if they give special treatment to certain religious groups." *Saif'ullah v. Sisto*, 2007 U.S. Dist. LEXIS 68703, *6 (E.D. Cal. 2007). Further, the "'rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations.'" *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (citation omitted). Indeed, many courts have issued injunctions in analogous cases involving the rights of religious minorities in prisons.[6]

---

[6] *See Canell v. Cook*, 1996 U.S. App. LEXIS 3367 (9th Cir. 1996) (reversing denial of injunction where prison denied Sunni Muslims group worship); *Rouser*, 707 F. Supp. 2d at 1060, 1066-67 (injunction issued where Wiccans were treated differently, violating Establishment Clause and Equal Protection); *Fluellen v. Goord*, 2007 U.S. Dist. LEXIS 95374, *2 (W.D.N.Y. 2007) (injunction prohibiting prison "from precluding plaintiffs' attendance at Nation of Islam services and classes"); *Buchanan v. Burbury*, 2006 U.S. Dist. LEXIS 48244, *23-24 (N.D. Ohio 2006) (ordering prison to "provide the Sacred Name Sabbatarians with the opportunity to engage in group worship"); *Garcia v. Clark*, 2011 U.S. Dist. LEXIS 73647, *10 (E.D. Cal. 2011) (injunction to "provide Plaintiff with the Kosher meals that are provided other similarly situated prisoners"); *Wofford v. Williams*, 2008 U.S. Dist. LEXIS 63946, *23-24 (D. Or. 2008) (same, for Seventh Day Adventist); *Menefield v. Cate*, 2009 U.S. Dist. LEXIS 96447, *4 (E.D. Cal. 2009)(same, for Muslim); *Luckette v. Lewis*, 883 F. Supp. 471 (D. Ariz. 1995)(same, for Freedom Church of Revelationist); *LeMay v. Dubois*, 1996 U.S. Dist. LEXIS 11645, *11-12 (D. Mass. 1996) (injunction permitting Native American to wear necklace because inmates were authorized to wear crosses and Star of David, violating Establishment Clause); *Campos v. Coughlin*, 854 F. Supp. 194, 208 (S.D.N.Y. 1994) (same, for Santeria beads, violating Equal Protection); *Rodriguez v. Coughlin*, 1994 U.S. Dist. LEXIS 5832, *5 (S.D.N.Y. 1994) (same); *Reinert v. Haas*, 585 F. Supp. 477 (S.D. Iowa 1984) (same, for Native American headbands); *Howard v. U.S.*, 864 F. Supp. 1019, 1027-30 (D. Colo. 1994) (injunction issued to provide space for non-theistic-Satanist where prison made accommodations for other religions, violating Establishment Clause).

Where, as here, the governmental grants a preference among religions, the court must "treat the law as suspect" and "apply strict scrutiny." *Larson v. Valente*, 456 U.S. 228, 244-46 (1982). Such action is presumed unconstitutional unless "justified by a compelling governmental interest," and "is closely fitted to further that interest." *Id.* at 247.[7]

It is important to make clear at the outset that Humanism is treated as an equivalent to religion for purposes of the Establishment Clause, and that theistic belief is not a requirement for religious definition. *See, e.g.*, *Gillette v. U.S.*, 401 U.S. 437, 439, 461-62 (1971) (entertaining claim "based on a humanist approach to religion"); *U.S. v. Seeger*, 380 U.S. 163, 176 (1965); *Torcaso v. Watkins*, 367 U.S. 488, 495 n.11 (1961) ("Secular Humanism" is a "religion"); *Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 2014 U.S. App. LEXIS 13354, *8 (7th Cir. 2014) ("*CFI*") (Humanism is a religion for Establishment Clause purposes); *Newdow v. U.S. Cong.*, 313 F.3d 500, 504 n.2 (9th Cir. 2002) ("recognized religions exist that do not teach a belief in God, e.g., secular humanism."); *U.S. v. Ward*, 989 F.2d 1015, 1017-18 (9th Cir. 1993) (recognizing that religion need not be theistic); *Grove v. Mead Sch. Dist.*, 753 F.2d 1528, 1534 (9th Cir. 1985) (recognizing that "Secular humanism may be a religion" for Establishment Clause purposes); *Chess v. Widmar*, 635 F.2d 1310, 1318 n.10 (8th Cir. 1980) ("Secular Humanism" is a "religion"); *In re Weitzman*, 426 F.2d 439, 457 & n.5 (8th Cir. 1970); *Am. Humanist Ass'n & Jason Michael Holden v. United States*, 2014 U.S. Dist. LEXIS 154670, *15 (D. Or. Oct. 30, 2014) ("the court finds that Secular Humanism is a religion for Establishment Clause purposes" and for equal protection purposes); *Howard*, 864 F. Supp. at 1022 (inmate with "humanistic ethical system" was entitled to practice his "religious" beliefs); *U.S. v. Meyers*, 906 F. Supp. 1494, 1499 (D. Wyo. 1995); *Crockett v. Sorenson*, 568 F. Supp. 1422, 1425 (W.D. Va. 1983) ("secular humanism is a religion"); *ACLU v. Eckels*, 589 F. Supp. 222, 227 (S.D. Tex. 1984); *In re "E"*, 59 N.J. 36, 55 n.4 (1971); *Welker v. Welker*, 24 Wis. 2d 570, 575-76 (1964); *Fellowship of Humanity v. Cnty. of Alameda*, 153 Cal. App. 2d 673 (1st Dist.1957).[8] *Cf. Remmers v. Brewer*, 494 F.2d 1277, 1278 (8th Cir. 1974) (inmates of nontheistic church were entitled to "exercise their religion in the same degree as other inmates"); *Wright v. Fayram*, 2012 U.S. Dist. LEXIS 84804 (N.D. Iowa 2012) (same).

Indeed, it is well settled that "religious beliefs protected by the . . . Establishment Clauses need not involve worship of a supreme being." *Kaufman II*, 733 F.3d at 696. As correctly noted by Judge Posner, Establishment Clause jurisprudence treats non-theists as a "sect of nonbelievers." *ACLU v. St. Charles*, 794 F.2d 265, 270 (7th Cir. 1986). Therefore, Atheism, like Humanism, is treated as a religion. *See Allegheny*, 492 U.S. at 590; *Wallace v. Jaffree*, 472 U.S. 38, 53 (1985); *Kaufman II*, 733 F.3d 692; *Kaufman I*, 419 F.3d 678; *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934 (7th Cir. 2003); *ACLU v. City of Plattsmouth*, 358 F.3d 1020, 1041 (8th Cir. 2004); *Desper v. Ponton*, 2012 U.S. Dist. LEXIS 166546, *5-6 (E.D. Va. 2012); *Hatzfeld v. Eagen*, 2010 U.S. Dist. LEXIS 139758, *17-18 (N.D.N.Y 2010); *Loney v. Scurr*, 474 F. Supp. 1186, 1194 (S.D. Iowa 1979); *State v. Powers*, 51 N.J.L. 432, 434-35 (N.J. Sup. Ct. 1889).

---

[7] Many courts have analyzed analogous prisoner claims under *Larson* strict-scrutiny. *See Warrior v. Gonzalez*, 2013 U.S. Dist. LEXIS 165387, *23-24 (E.D. Cal. 2013) (prison's "strip search policy prefers other religions over Islam. . . . [S]trict scrutiny should be applied."); *Evans v. Cal. Dep't of Corr. & Rehab.*, 2012 U.S. Dist. LEXIS 5373, *5-6 (C.D. Cal. 2012) (prison violated Establishment Clause under *Larson* by providing kosher meals to Jews but not Muslims); *Caruso v. Zenon*, 2005 U.S. Dist. LEXIS 45904, *47 (D. Colo. 2005) (same); *Glenn v. N.H. State Prison Family Connections Ctr.*, 2012 U.S. Dist. LEXIS 78689, *12-13 (D.N.H. 2012) ("by offering Christian religious services conducted by state-employed chaplains and Christian Bibles at no cost, and not providing a paid Imam or Qur'ans to inmates, the prison is demonstrating a preference for Christianity over Islam" failing "strict scrutiny"); *Rouser*, 630 F. Supp. 2d at 1194-96.

[8] *See also Kalka v. Hawk*, 215 F.3d 90 (D.C. Cir. 2000) (assuming, without deciding, Humanism is a religion for Establishment Clause purposes); *Smith v. Board of Sch. Comm'rs*, 827 F.2d 684, 689 (11th Cir. 1987) (same).

Although Humanism is not theistic, the Supreme Court in *Torcaso* recognized "Secular Humanism" as a religion for Establishment Clause purposes. 367 U.S. at 495. The Court explained that under the Establishment Clause, the government must not aid "those religions based on a belief in the existence of God as against those religions founded on different beliefs." 367 U.S. at 495. Following that statement, the Court recognized: "Among [those] religions" are "Secular Humanism." *Id.* at n.11.

In *Kaufman I*, the Seventh Circuit held that a prison violated the Establishment Clause by refusing to authorize an Atheist study group. 419 F.3d at 681. The prison denied the request on the ground that Atheism is not a religion. The court disagreed, reasoning "[t]he Supreme Court has recognized atheism as **equivalent to a 'religion.'**" *Id.* at 682-83. In *Kaufman II*, the Seventh Circuit once again held that a different prison's refusal to recognize an Atheist study group was unconstitutional. 733 F.3d 692. Inmates at that facility could "practice religion through 'Umbrella Religious Groups.'" *Id.* at 695. The chaplain denied the application, asserting it was "not viewed as a religious request." *Id.* Another official added that an Atheist study group is "more educational and philosophical in nature." *Id.* at 695-96. The Seventh Circuit criticized the prison for disregarding *Kaufman I*, but noted the district court did not "make that mistake." *Id.* at 694. Yet the district court "suggested that insofar as Kaufman's request included sub-groups such as 'Humanist' and 'Freethinker,' it was not a religious request because it swept in too many dissimilar schools of thought." *Id.* at 697. The Seventh Circuit rejected these contentions, concluding that the prison failed to provide a "legitimate secular justification" for "discriminating between the proposed atheist study group and the seven recognized umbrella groups." *Id*.

Most notably, the federal district court of Oregon recently denied the Federal Bureau of Prison's motion to dismiss in our lawsuit challenging the department's refusal to recognize Humanism as a religious assignment and its refusal to authorize a Humanist study group. *Am. Humanist Ass'n & Jason Michael Holden v. United States*, 2014 U.S. Dist. LEXIS 154670, *15 (D. Or. Oct. 30, 2014) ("the court finds that Secular Humanism is a religion for Establishment Clause purposes" and for equal protection purposes). There, the court explained that the plaintiffs (AHA and Jason Holden) "have made a colorable claim that defendants have violated Holden's First Amendment rights" by refusing to authorize a Humanist study group. *Id.* at *14. The court went on to deny the government officials qualified immunity, reasoning:

> Defendants argue that they are unaware of any Supreme Court precedent or circuit court decision issued before or during the period where the alleged violation occurred that has held that Humanism is a religion for the purposes of the Establishment Clause, However, as noted above, the Supreme Court in *Torcaso*, referred to "Secular Humanism" as a religion. 367 U.S. at 495 n. 11. Moreover, in *McCreary County, Ky. v. American Civil Liberties Union of Ky.*, the Supreme Court said that the touchstone of the Establishment Clause was the "principle that the First Amendment mandates government neutrality between religion and religion, and *between religion and nonreligion*." 545 U.S. 844, 860 [] (2005) (emphasis added). **Thus, whether Humanism is a religion or a nonreligion, the Establishment Clause applies**. In addition, the Seventh Circuit has held that a prison violated inmates' constitutional rights when it refused to allow an Atheist study group on the grounds that it was not a religion. *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005). This year, the Seventh Circuit laid it out even more clearly, "when making accommodations

8

in prisons, states must treat atheism as favorably as theistic religion," and that, "[w]hat is true of atheism is equally true of humanism, and as true in daily life as in prison." *Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869, 873 (7th Cir. 2014). . . . Rather, the court simply summarized the law as it is commonly understood. Thus, the court finds that the right was clearly established and that defendants have not presented sufficient evidence to demonstrate that the individual defendants are entitled to qualified immunity.

*Id.* at *22-23.

Here, as in the above-cited cases, the prison is violating Mr. Teague's "clearly established" constitutional rights under the First Amendment. Specifically, by refusing to authorize a Humanist study group while authorizing groups for many religions, the Department is unconstitutionally preferring some religions over Humanism, and to a certain extent, theism over non-theism. *See also Larson*, 456 U.S. at 246; *Rouser*, 630 F. Supp. 2d at 1195-96 ("evidence that Native American inmates are allowed access to a sweat lodge and fire pit, while Wiccan inmates are not" is denominational preference subject to strict scrutiny). This amounts to a "denominational preference." *See id.*; *Warrior*, 2013 U.S. Dist. LEXIS 165387, *22-23 (denominational preference found where strip-searches were conducted at Islamic services but not at "Catholic and Jewish programming"); *Fulwood v. Clemmer*, 206 F. Supp. 370, 374 (D.C.D.C. 1962) (denial of medals to Muslims while allowing them for other religions constituted religious discrimination).

Significantly, the Department reportedly authorizes meeting groups for other "religions" that do not necessarily profess a belief in a supernatural God, including Buddhism (*Torcaso*, 367 U.S. at 495 n.11), and Wicca, indicating that its refusal to accommodate Humanists on such grounds is pretext; based on invidious McCarthy-era stereotypes against Atheists/Humanists as a class. But "secular humanism is a religion, as much so as Buddhism." *Crockett*, 568 F. Supp. at 1425. Such underinclusive enforcement suggests the government's "supposedly vital interest" is not compelling. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546-47 (1992).[9]

While the Department's refusal to accommodate a Humanist group is properly analyzed under *Larson* strict-scrutiny, *supra*, its refusal also fails the tripartite *Lemon* test (*Lemon v. Kurtzman*, 403 U.S. 602 (1971)). Pursuant to *Lemon*, governmental action violates the Establishment Clause if: (1) it favors "one religion over another without a legitimate secular reason," *Nelson v. Miller*, 570 F.3d 868, 881 (7th Cir. 2009); (2) its effect is to advance, endorse or inhibit religion; *or* (3) it fosters excessive entanglement with religion. *Allegheny*, 492 U.S. at 592; *Inouye*, 504 F.3d at 713 n7. Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987).

The Department's refusal violates the Establishment Clause under the first prong of *Lemon* because it has no "legitimate secular reason" for treating Humanists differently. *See Kaufman II*, 733 F.3d at 697; *Sherman-Bey*, 2011 U.S. Dist. LEXIS 73801, *27-28 (rejection of group "services based on religious disagreement, not logistical reasons" violates Establishment Clause). In *Kaufman I*, the Seventh Circuit held that a prison had no "legitimate secular reason" for refusing an Atheist study group, thus violating the Establishment Clause pursuant to the "first part of the *Lemon* test." 419 F.3d

---

[9] It bears emphasis that without a Humanist option (or even an Atheist option) Mr. Teague felt compelled to switch his official religious designation to "Buddhism," as it was the closest label to his deeply held Humanist convictions. However, Mr. Teague is not a Buddhist and prefers to meet with other Humanists in the prison.

at 683-84. Specifically, they "advanced no secular reason why the security concerns they cited as a reason to deny his request for an atheist group do not apply equally to gatherings of Christian, Muslim, Buddhist, or Wiccan inmates." *Id.* at 684.

Regardless of the purposes motivating its decision, the Department's actions fail constitutional muster under the second prong of *Lemon*, which "'asks whether, irrespective of the government's actual purpose,'" the practice "conveys a message of endorsement'" of some religions over others. *Access Fund v. U.S. Dep't of Agric.*, 499 F.3d 1036, 1045 (9th Cir. 2007). In *Rouser*, prison staff made announcements "to the general population about Protestant, Catholic and Muslim services, but rarely announce[d] Wiccan services." 630 F. Supp. 2d at 1196. The court held that defendants failed to show that "the announcement policy does not have the primary effect of advancing or inhibiting religion" under *Lemon*. *Id.* at 1199. Likewise, allowing Buddhists, Wiccans, and Rastafarians to meet in groups while outright denying the same to Humanists, amounts to an unconstitutional preference for some religions.

In addition to violating the Establishment Clause, *supra*, the Department's refusal to accommodate a Humanist meeting group violates the Equal Protection Clause of the Fourteenth Amendment. *See Cooper v. Pate*, 378 U.S. 546 (1964) (inmate stated claim when "alleging that solely because of his religious beliefs he was denied . . . privileges enjoyed by other prisoners"); *Reed v. Faulkner*, 842 F.2d 960, 964 (7th Cir. 1988) ("defendants are treating the Rastafarians differently from American Indians (and doing so deliberately) for no reason at all; and if so this is a denial of equal protection of the laws in an elementary sense.").

The "equal protection guarantee ensures that prison officials cannot discriminate against particular religions." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997). Prisons must afford an inmate of a minority religion "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). Prisons need not provide identical facilities or personnel to different faiths, *id* at 322 n.2, but must make "good faith accommodation of the [prisoners'] rights in light of practical considerations." *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987).

There is no question that the Department denied Mr. Teague's application for a Humanist group simply because of his deeply held Humanist convictions. As such, the Department's refusal amounts to discrimination on the basis of religion. The "denial of [a] privilege to adherents of one faith while granting it to others is discrimination on the basis of religion." *Native American Council of Tribes v. Solem*, 691 F.2d 382, 384-85 (8th Cir. 1982) (emphasis added). *See Cooper*, 382 F.2d at 522. *See also Brown v. Johnson*, 743 F.2d 408, 413 (6th Cir. 1984) ("by allowing prisoners of other faiths and their respective churches to hold group worship services, while denying plaintiffs the same privilege" undoubtedly "is a distinction among religious faiths."); *Fulwood*, 206 F. Supp. at 374 ("By allowing some religious groups to hold religious services" while "denying that right to petitioner and other Muslims, respondents have discriminated" on the basis of religion); *Hatzfeld v. Goord*, 2007 U.S. Dist. LEXIS 98782, *13-14 (N.D.N.Y 2007) (where Hepatitis C treatment could only be obtained through participation in theistic substance abuse program, defendants discriminated against inmate "**because he was an atheist**."). *Cf. CFI*, 2014 U.S. App. LEXIS 13354, *13 (statute violated Equal Protection because it arbitrarily discriminated against Humanists).

Where, as here, the government discriminates on the basis of religion, a "suspect" class, strict scrutiny applies. *Ass'n of Christian Schs. Int'l v. Stearns*, 362 Fed. Appx. 640, 646 (9th Cir. 2010)

(religion is a suspect class); *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001) (same); *Rupe v. Cate*, 688 F. Supp. 2d 1035, 1041-49 (E.D. Cal. 2010); *Remmers v. Brewer*, 361 F. Supp. 537, 542 (S.D. Iowa 1973). Discrimination against Atheists/Humanists requires even closer scrutiny due to the history of invidious discrimination against this class. The Court has noted the dangers of failing to examine prevailing stereotypes in an equal protection analysis. *Miss.Univ. for Women v. Hogan*, 458 U.S. 718, 725-26 (1982). "Some classifications are more likely than others to reflect deep-seated prejudice," and governmental action "predicated on such prejudice" is wholly incompatible with equal protection. *Plyler v. Doe,* 457 U.S. 202, 216 n.14 (1982).

Prejudice against Atheists/Humanists dates back to our nation's founding[10] and continues today. Surveys, such as a study published in American Sociological Review in 2006, ranked Atheists as the most disliked and distrusted minority group in the country, ranking below recent immigrants, Muslims, and gays.[11] Even after the September 11 attacks, a study revealed that while a significant number of Americans would be reluctant to vote for a well-qualified candidate if he or she were Muslim (38%), many more expressed reservations about voting for an Atheist (52%).[12] To date, only one member of Congress has been *openly* Atheist, which wasn't until 2007.[13] At least 7 states still have laws that prohibit Atheists from holding public office, and Atheists in at least 13 countries can face execution for their expressing their beliefs.

The federal district court of Oregon recently agreed with us that refusing to recognize a Humanist meeting group while recognizing such groups for theistic religions is a violation of Equal Protection. Specifically, the court wrote:

> Here, plaintiffs have clearly shown that Holden's religious beliefs were the reason why defendants refused to grant his requests. Defendants' actions need not be malicious, only motivated by the fact that plaintiffs' hold a different set of religious beliefs. Allowing followers of other faiths to join religious group meetings while denying Holden the same privilege is discrimination on the basis of religion. Therefore, the court finds that plaintiffs have alleged sufficient facts to state an equal protection claim for relief that is plausible on its face.

*Am. Humanist Ass'n v. United States*, 2014 U.S. Dist. LEXIS 154670, *16-17 (D. Or. Oct. 30, 2014).

In view of the above, it is plain that the Department is violating Mr. Teague's "clearly established" constitutional rights under the Establishment Clause and Equal Protection Clause. As such, the Department and its officials may be sued under 42 U.S.C. § 1983 for damages, an injunction, and attorneys' fees. This letter serves as a *final* notice of the unconstitutional activity and demands that the Department immediately: (1) authorize a Humanist meeting group; (2) allow Mr. Teague to identify as a "Humanist" on his official prison record (OPUS); and (3) and provide us with

---

[10] Denying the existence of God was a criminal offense. 4 William Blackstone, *Commentaries on the Laws of England: A Facsimile of the First Edition of* 1765-1769, at 59 (1979).

[11] Penny Edgell, *Atheists As "Other": Moral Boundaries and Cultural Membership in American Society*, AM. SOC. REV. Vol 71, 211 (2006).

[12] The Pew Forum on Religion & Public Life, *July 24, 2003: Many Wary of Voting For an Atheist or a Muslim,* 1, 10-14 (2003).

[13] Secular Coalition for America, *Congressman Comes Out as Nontheist, Wins Re-election! Secular Coalition Congratulates Rep. Pete Stark of California,* (November 5, 2008). More illuminating is the fact that former Rep. Barney Frank (D-Mass) publically declared his homosexuality in the 1980s but did not disclose being an Atheist until *after retiring*.

written assurances that such measures will be taken and that Mr. Teague will be allowed to meet with other Humanists on the same terms as inmates of religious groups in the North Carolina prisons.

We are most hopeful that you will recognize the concerns raised by this letter and address them properly. To avoid legal action, please respond within fourteen (14) days. We thank you in advance for your attention to this matter.

Very truly yours,
Monica Miller, Esq.

cc:

David Mitchell, Administrator
Lanesboro Correctional Institution
PO Box 280
Polkton, NC 28135

Kwame Teague 0401897
PO Box 280
Polkton, NC 28135