```
 1               UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NORTH CAROLINA
 2                      WESTERN DIVISION


 3

    AMERICAN HUMANIST ASSOCIATION,  )
 4  et al.,                         )
                                    )
 5           Plaintiff,             )
                                    )
 6      vs.                         )  5:15-ct-03053-BO
                                    )
 7  FRANK L. PERRY, et al.,         )
                                    )
 8           Defendants.            )

 9

10
                    TRANSCRIPT OF HEARING
11                    JANUARY 24, 2018
          Before Terrence W. Boyle, District Judge
12

13

14
    APPEARANCES OF COUNSEL:
15
            For the Plaintiff:
16
                MONICA L. MILLER, ESQ.
17              American Humanist Association
                1821 Jefferson Place, NW
18              Washington, DC 20036

19          For the Defendant:

20              THOMAS M. WOODWARD, ESQ.
                NC Department of Justice
21              P. O. Box 629
                Raleigh, North Carolina 27602
22

23  Court Reporter:

24              Suzanne G. Patterson, Registered Professional
                Reporter, Notary Public, State of North Carolina
25              Stenograph with Computer Aided Transcription
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 1 of 18

1                    P R O C E E D I N G S

2           THE COURT:  Good morning.  This is Humanist

3   Association versus Perry or the current Secretary of Public

4   Safety.  The plaintiff is seeking an injunction against the

5   State Department of Corrections or Public Safety.  Who's

6   going to argue that?

7           MS. MILLER:  I am, Your Honor.  Monica Miller.

8           THE COURT:  Okay.  I'll hear from you.

9           MS. MILLER:  May it please the Court.  The

10  department's discrimination against Humanist inmates is

11  presumed unconstitutional under both the equal protection

12  clause, as well as the establishment clause.  And that's set

13  forth by the Larson versus Valente case for the

14  establishment clause and Johnson versus California for the

15  equal protection clause.  And under both tests, the state

16  must come forward with a compelling governmental interest to

17  explain why it's treating Wickens and Rastafarians

18  differently from Humanist inmates.  Not only must it show

19  that there is a compelling governmental --

20          THE COURT:  Who did they treat differently?

21          MS. MILLER:  Wiccans, Rastafarians, Buddhist, all

22  the religions that they have approved and are accommodating,

23  they are treating them differently from Humanist inmates who

24  have an equal interest in meeting weekly on a regular basis

25  to study and discuss their shared beliefs.

www.huseby.com            Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO     Document 101     Filed 03/26/18     Page 2 of 18

1      THE COURT: Is there a population or just one
2  single person?
3      MS. MILLER: Yes, Your Honor. There are numerous
4  Humanist inmates, we have at least about 17 documented
5  inmates that are Humanists, about six of which are known
6  American Humanist Association members. Part of the problem
7  with the identification is because they don't recognize
8  Humanism in the system, it's really kind of impossible to
9  track from the institutional level, but we know that the
10 state has approved various religions with only one inmate
11 known, for instance, the Aquariun Universalist or
12 Aquariun -- Christine Universalist Church was recognized in
13 2012 with only one inmate that had expressed an interest.
14      In the meantime, Mr. Teague had submitted his
15 complaints or his request at the same time, when there's at
16 least about five other known inmates at a different facility
17 that had expressed an interest in Humanist facilities or
18 accommodations.
19      THE COURT: What kind of -- of activity or worship
20 are you trying to achieve?
21      MS. MILLER: Your Honor, the main thing that Mr.
22 Teague is looking for are weekly meetings, for instance, the
23 Buddhist group has a Buddhist study meeting, as well as a
24 Buddhist meditation meeting. There's a Rastafarian study
25 group, as well as a Rastafarian worship group. The

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 3 of 18

 1  Humanists are really looking to do sort of the study aspect
 2  of it, to talk about their shared convictions, to work
 3  together on, you know, thinking about ethics of life and the
 4  meaning of life and the purpose of life and that sort of
 5  thing.  The same interest that a Wiccan would have meeting
 6  with fellow Wiccan.
 7           THE COURT:  How does the Department of Public
 8  Safety treat people who are of the Quaker faith?
 9           MS. MILLER:  I believe they also accommodate them
10  with weekly meetings, as well as with purchase materials,
11  for instance, once the state recognizes a faith, numerous
12  benefits enter like the ability to purchase materials
13  through the state versus purchasing your own group
14  materials.  And I believe there are only six Quakers
15  identified statewide and --
16           THE COURT:  The Department of Corrections?
17           MS. MILLER:  Yes, there's only six Quakers, I
18  think, that have been identified.
19           THE COURT:  Six individuals who are of the Quaker
20  faith?
21           MS. MILLER:  Yes.
22           THE COURT:  Out of 40,000 or 35,000?
23           MS. MILLER:  Yes, that's correct.
24           THE COURT:  And so how do they experience their
25  religious practice?

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 4 of 18

1        MS. MILLER:  Well, Your Honor, I'm not quite sure
2   about the Quakers but I know that they are entitled to group
3   meetings.  So it's up to each individual facility to
4   determine whether or not --
5        THE COURT:  In order to have a group, you need more
6   than one person.
7        MS. MILLER:  Well, exactly, and I agree with that,
8   Your Honor.  But the thing is that, without even being
9   recognized by the state, they're not even entitled to
10  meetings.  Mr. Teague can't even meet with other Humanists
11  if there is sufficient demand because the state is not
12  allowing them to meet period.  Whereas, the Quakers, because
13  they are now recognized as a faith group, can meet subject
14  to the, you know, neutral rules that they've set out for
15  meetings.
16       So as it stands, they allow meetings for groups as
17  small as two, we have a whole table listing the meetings
18  where only one or two inmates were present at various group
19  study meetings.  So the demand requirement is quite low.  So
20  as long as the facility has, you know, two inmates, that's
21  the standard that they've imposed, two Humanist inmates
22  would be enough for -- to meet that quorum requirement.
23       THE COURT:  So at present the Department of
24  Corrections, can it identify the people who want to join
25  with your client?

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO   Document 101   Filed 03/26/18   Page 5 of 18

1       MS. MILLER:  At present, they cannot.  We know
2  which ones, you know, we have certain members of the
3  American Humanist Association, but because they refuse to
4  allow an inmate when he comes in and fills out his
5  designation card, to write down Humanist, they can't tell us
6  how many Humanist inmates are even interested in these
7  meetings because they wouldn't allow them to put that on
8  their form.  Whereas, with the Quakers and with the
9  Aquariums CCU, which is the group with only three inmates
10 statewide, they are allowed to designate that and, you know,
11 the department can distribute resources accordingly, but
12 without that initial recognition of Humanism, they aren't
13 allowed to, you know, even get any of those benefits.
14       And so part of the problem is that we're not
15 asking, you know, for Sacramental wine or something very
16 unique to religion, it's just weekly meetings.  And the
17 cases make very clear that weekly meetings for atheists and
18 humanists are no less justified than they are for other
19 deistic religions, especially when it comes to a study group
20 that doesn't require, you know, any sort of worship items.
21 And the department has already conceded that recognizing
22 Humanism and affording Humanists equal treatment, would not
23 pose any threat to the security operations and safety of the
24 North Carolina Department of Corrections.
25       So, basically, they've conceded there's no

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 6 of 18

1 compelling governmental interest for the deistic treatment,

2 let alone even a legitimate penological interest, which

3 would be the threshold under the lowest, you know, even if

4 we didn't have such scrutiny applying.  So, really, under

5 the lowest or the highest standard, they have failed to

6 satisfy the Constitutional test that are demanded of them

7 for deistic treatment.

8             THE COURT:  Okay.  Is that it?

9             MS. MILLER:  Yes.  I have nothing further.

10            THE COURT:  Okay.  Thank you.

11            Let's see, you're Mr. Woodward?

12            MR. WOODWARD:  Woodward, Your Honor.

13            THE COURT:  And are you with the Attorney General's

14 Office?

15            MR. WOODWARD:  I am with the Attorney General's

16 office and I have with me Carlton Joyner.  Mr. Joyner is

17 deputy director of prisons and he is directly responsible

18 for the supervision of all the Chaplains he services at the

19 prisons in North Carolina.

20            THE COURT:  Okay.  Where is the plaintiff housed

21 now?

22            MR. WOODWARD:  The plaintiff is last housed, Your

23 Honor -- actually, Your Honor, I cannot speak to that.  We

24 have been dealing not with the plaintiff since he's had

25 counsel, we have only been dealing through his attorney.

www.huseby.com                Huseby, Inc. Regional Centers                800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO     Document 101     Filed 03/26/18     Page 7 of 18

```
 1            THE COURT:  Okay.  Where's your client housed?
 2            MS. MILLER:  He's currently at Nash.
 3            THE COURT:  Where?
 4            MS. MILLER:  Nash.
 5            THE COURT:  Nash Correctional?
 6            MS. MILLER:  Yes.
 7            THE COURT:  Where is that, in Nashville?
 8            MR. JOYNER:  Uh-huh.  Yes, sir.
 9            THE COURT:  And what is that, a medium?
10            MR. JOYNER:  Yes, sir.
11            THE COURT:  How many people are there, like 800 or
12  so?  A thousand?
13            MR. JOYNER:  Probably between six and eight.
14            THE COURT:  Six to 800.  Not as big as Pasquotank?
15            MR. JOYNER:  No.  No, sir.
16            THE COURT:  So do you know if there are any other
17  people who would want to join in as a Humanist in their
18  religious belief?
19            MR. JOYNER:  The only case I can remember is --
20            THE COURT:  Yeah.  Go ahead.
21            MR. JOYNER:  Only one I can remember having seen
22  been in this position is actually the information from
23  Mr. Teague requesting to participate in the religion.  I
24  don't remember us having received any request from any other
25  individuals wishing to participate in Humanism.
```

www.huseby.com             Huseby, Inc. Regional Centers             800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 8 of 18

1  THE COURT: Okay. All right. Mr. Woodward, what
2  do you want to say about it? They're asking for an
3  injunction to allow you to recognize this spiritual activity
4  and this religious belief under their Freedom of Religion
5  claim. What's your position about it?
6  MR. WOODWARD: Well, Your Honor, it looks like that
7  they have two. They're looking under the establishment
8  clause as well as under equal protection. But I would
9  submit that we don't get to equal protection until after
10 we've looked at the establishment clause. Really, unless
11 this Court finds --
12 THE COURT: How is it the establishment clause, why
13 isn't it the free exercise of religion?
14 MR. WOODWARD: Your Honor, I'm glad you asked that
15 question. It has not been filed under a free exercise
16 clause because Mr. Teague does have free exercise of his
17 religious rights. We have not banned any books, we have
18 allowed, specifically, people from the Humanist Society to
19 come to talk to him, he is allowed to talk to other people
20 in the facility who are Humanists, he can practice any of
21 his beliefs within his cell his self. So, actually, as far
22 as free exercise is concerned, one, they haven't pled it
23 and, second, they really don't have a free exercise case to
24 present to the Court.
25 THE COURT: Okay. Well, Humanism isn't being

www.huseby.com         Huseby, Inc. Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 9 of 18

1 under-written by the federal or state government as an
2 establish religion, no one is compelled to become a
3 Humanist, so how does it fit into the establishment --
4 establishment clause says that the sovereign can't prefer a
5 certain religion.
6     MR. WOODWARD: Exactly, Your Honor, that's exactly
7 our point. In the Humanist Society, perhaps they'll stand
8 up and tell you, they don't consider themselves to be a
9 religion. Matter of act, if you look at their briefs, Your
10 Honor, they say it's a red herring. When we talk about
11 religion or when we talk about -- they say it's a red
12 herring, it's a matter of semantics. No, it's not. It's
13 right in the First Amendment itself. We must first
14 establish that this is a religion before it becomes an
15 establishment clause case.
16     And what we find with Humanism, it is not a
17 religion, they do not hold themselves out to be a religion,
18 they are a way of life. Very specific into this, we took
19 the deposition of Mr. Teague who is very -- a very learned
20 and thoughtful man and we asked Mr. Teague this question:
21     Well, can you be a Humanist and a Christian? Yes.
22     How about a Humanist and a Buddhist? Yes.
23     Humanist and a Muslim? Yes.
24     And, matter of fact, Mr. Teague has gone to both
25 Muslim and to Buddhist meetings while he's declared

www.huseby.com    Huseby, Inc. Regional Centers    800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 10 of 18

1  himself --

2          THE COURT:  So is your argument that Humanism is

3  like passivism?  You can be a passivist and belong to a

4  religion that just happens to be a philosophic adaptation

5  that you subscribe to.

6          MR. WOODWARD:  Your Honor, that's exactly the

7  point.  And the District Court in Virginia came to the same

8  conclusion, it's a way of life.  And so it's not a

9  distinction and I can't think of any other religion -- all

10 religions or many religions have similar tenets, that we

11 should be good to other people, that we should help the

12 poor, but there is no other religion that I can think of and

13 maybe plaintiffs can help me with this one, where one

14 religion doesn't have something that's mutually exclusive of

15 this.  This is the Thoreau Society, this is like other

16 societies.  Passivism is a perfect example, it is a way of

17 life, it is not a religion, and if it's not a religion, it's

18 not protected under the First Amendment.

19         THE COURT:  That's it?

20         MR. WOODWARD:  Yes, Your Honor.

21         THE COURT:  You want to rebut that?

22         MS. MILLER:  Yes, I would, Your Honor.  Actually, I

23 have a couple of points to make.  The first of which is the

24 relevancy of the establishment clause and the reason we

25 didn't bring a free exercise clause claim, and it's very

www.huseby.com                Huseby, Inc. Regional Centers              800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 11 of 18

1  simple.  There isn't a free exercise clause right here
2  because under the free exercise clause, one may not -- I
3  mean, sorry, under the establishment clause, one may not
4  prove that there is some sort of substantial burden on a
5  religious exercise.  They simply need to prove that their
6  religion is being preferred over another religion or
7  religion is being preferred over non-religion.  And for that
8  reason, other Courts that have addressed this very issue as
9  to whether atheists or Humanists can meet in prison groups
10 on the same terms as Buddhists and Wiccans and so forth, has
11 concluded that they need not be considered even a religion
12 because the establishment clause equally prohibits the
13 treatment of religion over non-religion.
14           But, secondly, the Supreme Court of the United
15 States has already made very clear that Secular Humanism is
16 to be treated like a religion just as much as Buddhism and
17 other non-theistic traditions, and that was in the Torcaso
18 versus Watkins case.  In fact, this Court under the previous
19 order of Judge Fox had already made the same proclamation
20 that the establishment clause pursuant to Torcaso versus
21 Watkins, recognizes Secular Humanism as a religion.  Whether
22 or not it's actually religion or is treated like one, the
23 Courts have recognized that there's no reasonable basis to
24 say that Humanists cannot meet in groups just because
25 they're non-theistic than a Buddhist that's also

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO     Document 101     Filed 03/26/18     Page 12 of 18

1  non-theistic.

2       In fact, you know, opposing counsel is saying,
3  well, there's no ethical code to Humanism and it's more of a
4  philosophy, that's actually not even true.  The Humanists
5  are guided by a document called the Humanist Manifesto and
6  in it lays all sorts of, you know, guiding principles as to
7  how one can lead a good and ethical life, that even though
8  without theism affirms our ability to live ethical lives in
9  pursuit of the greater good of humanity.  So there are
10 Humanists' Code of Ethics.  In fact, the Humanism Society
11 endorses and trains Chaplains, Celebrants to perform the
12 same functions as Rabbis and Priests.  And even Chaplain
13 Brown had recognized that one can become ordained in the
14 Humanist Society's purview and be treated the same as a
15 Rabbi or a Humanist Minister.

16      But the point, again, is that the establishment
17 clause does not require that Mr. Teague prove that he is
18 being somehow burdened by the inability to not meet with
19 other groups, rather it puts the onus on the state to
20 justify why the Asatru group or the Buddhist group can meet
21 once a week and have a group called, "Discovering Buddhism",
22 why Humanists, who have an equal interest in meeting with
23 one another, can't do the same thing.

24      And I also wanted to point out that, with respect
25 to demand, in 2016, Nash, where Mr. Teague is currently

www.huseby.com         Huseby, Inc. Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 13 of 18

1  residing, there was a Discovering Buddhism meeting with only
2  two members present, there was a Bible study meeting with
3  only three members present, and there was a Rastafarian
4  meeting with four members present, and that's just a random
5  sampling. But the point being is that if there's one other
6  inmate that's interested in Humanist study group, that
7  under, at least the quorum that's established at Nash, that
8  that would be sufficient, at least with respect to the
9  Buddhist group, which only has two members.
10         Again, I want to remind the Court of the Seventh
11 Circuit's recent decision in Kaufman one and Kaufman two, as
12 well as CFI, where it made it very clear that prisons must
13 treat atheists and Humanists groups on the same terms as
14 theistic groups, at least with respect to meetings and
15 recognition. And that's consistent with the Fourth
16 Circuit's precedence, as well as the Supreme Court precedent
17 recognizing that the government cannot prefer some religions
18 over others and religion over non-religion.
19         THE COURT: Okay.
20         MS. MILLER: So, yes, one more point I wanted to
21 make was also the fact that opposing counsel has stated that
22 Mr. Teague is allowed to meet with other Humanists, like,
23 outside of the context of a formal meeting group, but that's
24 actually incorrect. If a group tries to meet under a sort
25 of a uniform type of interest, like the Humanist group, they

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 14 of 18

1  could be labeled a security threat group.  And, in fact, one
2  inmate had already received a security threat group threat
3  to be -- to have a designation for simply receiving
4  materials from the American Humanist Association.
5         And it's also -- I would like to correct another
6  misstatement which was that they're only aware of Mr.
7  Teague's request for a Humanist group.  While Mr. Teague is
8  the only one who has submitted a DC572 form, they are aware
9  that there is another group of Humanists at, I think it was
10 Foot Hills Institution, there was four inmates that had
11 expressed interest in a Humanist study group or a Humanist
12 meeting group and wanted to receive Humanist materials that
13 were donated by the American Humanist Association, and the
14 prison completely refused to allow them to do that.  They
15 didn't say, you know, if you want your religion recognized,
16 here's a DC572 form, they just said, you're not going to be
17 recognized.  And, in fact, threatened them with a security
18 threat group if they attempted to meet.  So the suggestion
19 that Mr. Teague can go around, you know, and find other
20 Humanists and form his own sort of ad hoc meeting is
21 actually not supported by the record.
22         So I have nothing further unless the Court --
23         THE COURT:  Thank you.  Are you finished?
24         MR. WOODWARD:  May I just quickly address a couple
25 points, Your Honor?

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 15 of 18

1        THE COURT:  Sure.

2        MR. WOODWARD:  Okay.  They've cited a lot of cases
3   concerning atheists and if we were talking about atheists, I
4   think that they would perhaps have a lot stronger issue.
5   Atheists do not believe in God and I think that they have a
6   right to that, but what they describe themselves, remember,
7   they're not a religion, they have an ethical code, that
8   sounds like passivist to me, that sounds like Thoreau people
9   to me.  Secular Humanism, Torcaso, what they cite in the
10  Supreme Court is a footnote that had been adopted by the
11  Seventh Circuit to say that the Supreme Court says that
12  Secular Humanism is a religion for purposes of First
13  Amendment, other Courts have specifically denied that and
14  said, no, that was not the issue in Torcaso.  It was a
15  footnote, it's nothing more than a footnote, it is not
16  controlling.  And if it was controlling, Your Honor, we
17  wouldn't be here today and we wouldn't need to argue this
18  case to you.

19        And you have to have at least six people in any
20  facility in order to have what's called "congressional
21  worship" or "congregational worship".  So there's got to be
22  six people to a particular meeting, we can't -- we can't
23  force you to go there but you have to have six at least for
24  us to schedule it and that's the issue.  Now, can Mr. Teague
25  go out on the grounds, grab 20 people, go in a huddle and

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 16 of 18

1  start talking about Secular Humanism, no, you can't, nobody
2  can do that.  That's a security issue.  But he can go
3  individually to people, he can go to groups of two and three
4  and talk to those people about Secular Humanism.  All this
5  time this case has been filed, nobody else has petitioned to
6  join this case from Nash or from any other facilities, Your
7  Honor.  And that's all my points.
8           THE COURT:  Okay.  Thank you, both sides.  I'll
9  give you a written order as soon as I can.  Appreciate your
10 arguments.
11          We will be in recess.
12          (The foregoing proceedings concluded at 10:30 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

www.huseby.com                Huseby, Inc. Regional Centers                800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO    Document 101    Filed 03/26/18    Page 17 of 18

1				CERTIFICATE

2  STATE OF NORTH CAROLINA

3  COUNTY OF WAKE

4

5		I, Suzanne G. Patterson, the officer before whom

6  the foregoing proceeding was taken, do hereby certify that

7  said hearing, pages 2 through 17, inclusive, is a true,

8  correct and verbatim transcript of said proceeding to the

9  best of my ability.

10		I further certify that I am neither counsel for,

11  related to, nor employed by any of the parties to the action

12  in which this proceeding was heard; and further, that I am

13  not a relative or employee of any attorney or counsel

14  employed by the parties thereto, and am not financially or

15  otherwise interested in the outcome of the action.

16		Dated this 25th day of March 2018.

17

18

19

20  _____

		Suzanne G. Patterson
21		Registered Professional Reporter

22

23

24

25

www.huseby.com		Huseby, Inc. Regional Centers		800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 5:15-ct-03053-BO   Document 101   Filed 03/26/18   Page 18 of 18